UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ABDELBASSET ELAREF, | Case No: C 16-6316 SBA |
| Plaintiff, | **AMENDED ORDER DENYING DEFENDANT SEIU LOCAL 87'S MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER, AND GRANTING PLAINTIFF'S MOTION TO REMAND[1]** |
| vs. | |
| ABLE SERVICES, the SEIU LOCAL 87, and DOES 1-25, inclusive, | |
| Defendants. | |

Plaintiff Abdelbasset Elaref ("Plaintiff"), who is of Tunisian and Arab origin, brings the instant wrongful termination and retaliation action against his former employer, Able Services ("Able"), and SEIU Local 87 ("the SEIU"), of which he is a member. The Complaint alleges violations of the California Family Rights Act ("CFRA"), Cal. Gov. Code § 12945.2(a), (l); the Fair Employment and Housing Act ("FEHA"), id. § 12940(a), (m), (k); and two common law claims—all of which arise from Defendants' termination of Plaintiff's employment following his return from family leave to care for his terminally ill wife. The SEIU removed the action to this Court on the ground that certain of Plaintiff's claims are preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. In turn, Plaintiff filed a Motion to Remand and for Attorney's Fees, which the previously-assigned judge, Magistrate Judge Maria Elena-James ("the Magistrate"), has recommended granting in her Report and Recommendation.

The parties are presently before the Court on the SEIU's Motion for Relief from the Non-Dispositive Pretrial Order of Magistrate Judge in which it objects to the Magistrate's recommendations to remand the action and award fees to Plaintiff under 28 U.S.C.

---

[1] This Order replaces and supersedes Dkt. 27.

§ 1447(c). Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby OVERRULES the objections to the Magistrate's recommendation, DENIES the SEIU's motion, and GRANTS Plaintiff's Motion to Remand and for Attorney's Fees.[2]

## I.  BACKGROUND

### A.  FACTUAL SUMMARY

Defendant Able is a family-owned company that provides janitorial and building maintenance services. Compl. ¶ 3, Dkt. 1. On March 12, 2012, Plaintiff was hired by Able as an "Additional Services" employee and was assigned to work at the Embarcadero Center 4 office building in San Francisco. Id. ¶¶ 2, 17. At or around the same time, Plaintiff also became a member of the SEIU. Id. ¶ 17. In June 2013, Able notified Plaintiff by letter that his position at the Embarcadero Center was "permanent." Id. ¶ 18. The letter was sent by Marina Berrios ("Berrios"), Able's Human Resource Business Partner. Id. ¶ 28.

In September 2013, Plaintiff's wife was diagnosed with terminal metastatic colon cancer. Id. ¶ 19. Plaintiff continued to work full-time for Able until November 2014, at which time he requested family leave to care for his wife. Id. ¶ 20. Able granted his request and authorized him to take medical leave until May 19, 2015. Id. During his leave of absence, Plaintiff's wife passed away. Id. ¶ 21.

On April 7, 2015, several weeks prior to the expiration of his leave, Plaintiff returned to work. Id. ¶ 21. Two days later, Plaintiff's supervisor, identified in the Complaint as "Sivori," notified Plaintiff that "he was being terminated, asked him to turn in his keys and badges, and told him to go home." Id. The only explanation Able provided was that "his position had 'already been filled by another employee' and he was no longer needed." Id. The employee who replaced Plaintiff was Latino. Id. ¶ 23. According to Plaintiff, most of the managers at the SEIU are Latino and favor hiring Latino employees

---

[2] The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

instead of non-Latino employees.  Id. ¶ 22.  In addition, Able's managers, including Sivori, allegedly facilitate the SEIU management's preference for hiring Latino workers.  Id. ¶ 23.

Plaintiff made numerous attempts to ascertain why he had been terminated.  Id. ¶ 24. On April 13, 2015, Plaintiff spoke to Sivori, who told him "to go back to the union hall and there would be full time work available at another location."  Id.  Later the same day, Plaintiff called Sivori, asking him to provide a termination letter.  Id.  Sivori declined to do so, stating "I have four kids and don't want to get into trouble."  Id.  Although Sivori said he would speak to human resources, he eventually told Plaintiff that the "Union is playing games, and I cannot give you your position back."  Id.[3]

When Plaintiff went to the union hall as instructed, the SEIU failed to dispatch him to any job sites.  Id. ¶ 26.  Approximately one month following his termination by Able, Plaintiff "was asked to work at a specific job site – but when he went to the SEIU to get dispatched to the jobsite, he was ignored."  Id.  Plaintiff alleges that the SEIU "did not dispatch [him] to any further jobsites because (1) he was of Tunisian/Arabic national origin and, (2) LOCAL 87 was retaliating against PLAINTIFF for his complaint of discrimination to the EEOC/DFEH."  Id.

On July 15, 2015, Plaintiff sent Sivori an email asking why, given that he had taken protected medical leave, he was not being allowed to work at the Embarcadero Center.  Id. ¶ 27.  A week later on July 23, 2015, Sivori responded that Plaintiff was "still employed by ABLE and was still active in their system, and that if he went to the union hiring hall he would be dispatched to sites "needing a temporary employee."  Id.  The next day, Plaintiff responded to Sivori, informing him that he had been classified by Able as a permanent employee and therefore he should not have to be dispatched as a temporary employee.  Id. As support, Plaintiff attached a copy of his June 19, 2013, letter from Barrios.  Id. ¶ 28.  In

---

[3] On or about April 14, 2015, Plaintiff filed discrimination charges against Able and the SEIU with the federal Equal Employment Opportunity Commission ("EEOC")/California Department of Fair Employment and Housing ("DFEH").  Id. ¶ 25.

turn, Barrios emailed Plaintiff, claiming that the "permanency" letter was issued "in error." Id.

### B. PROCEDURAL HISTORY

On September 28, 2016, Plaintiff filed the instant action against Able and the SEIU in San Francisco County Superior Court. The Complaint alleges seven causes of action, as follows: (1) discrimination in violation of the CFRA, Cal. Gov. Code § 12945.2(a); (2) retaliation in violation of the CFRA, id. § 12945.2(l); (3) race discrimination in violation of the FEHA, id. § 12940(a); (4) retaliation for filing a discrimination charge in violation of the FEHA, id. § 12940(m); (5) failure to prevent discrimination in violation of FEHA, id. § 12940(k); (6) wrongful termination in violation of public policy; and (7) intentional infliction of emotional distress.[4] The pleadings allege, inter alia, that Defendants violated his rights under the CFRA and FEHA by terminating his employment for taking family leave. The Complaint also alleges that Plaintiff was not dispatched to job sites after his termination because of his national origin and/or in retaliation for having filed an administrative charge with the EEOC/DFEH.

On November 1, 2016, the SEIU removed the action "under the doctrine of Complete Preemption, as Plaintiff's claims are preempted by the Labor Management Relations Act, as resolution of Plaintiff's claims requires this Court to interpret the provisions of the Collective Bargaining Agreement [("CBA")]." Not. of Removal ¶ 5, Dkt. 1. Plaintiff filed a motion to remand on the grounds that all of his claims are predicated on state law and are not dependent on rights conferred by or requiring an interpretation of the CBA. Dkt. 4. In addition, pursuant to 28 U.S.C. § 1447(c), Plaintiff requested the recovery of his attorney's fees and costs incurred by the ostensibly improvident removal. The Magistrate, who was initially assigned to the action, issued a Report and Recommendation in which she recommended granting the motion to remand and for fees. Order for

---

[4] All of Plaintiff's causes of action are alleged jointly against both Able and the SEIU, except for the fourth cause of action for retaliation under the FEHA, which is alleged only against the SEIU.

Reassignment; Report & Recommendation Re: Motion to Remand ("Order"), Dkt. 15.
Following the issuance of the Order, the action was reassigned to this Court, since Able had
not consented to the Magistrate's jurisdiction.  Id.

Pursuant to Civil Local Rule 72-2, the SEIU filed the instant Motion for Relief from
the Non-Dispositive Pretrial Order of Magistrate Judge, which objects to the Magistrate's
recommendation to grant the motion to remand and award of fees to Plaintiff in the amount
of $7,875.00.  Dkt. 21.  The Court directed Plaintiff and the SEIU to file an opposition to
and reply in support of the motion, respectively.  Dkt. 22.  Plaintiff timely filed an
opposition, but the SEIU did not file a reply.  Dkt. 25.

## II.     LEGAL STANDARD

### A.     REVIEW OF A MAGISTRATE JUDGE'S RECOMMENDATION

A district court may refer both nondispositive matters and dispositive matters to a
magistrate judge.  28 U.S.C. § 636(b)(1)(A) (nondispositive); id. § 636(b)(1)(B)
(dispositive).  "The primary difference between subsections 1(A) and 1(B) is that the
former allows the magistrate to 'determine' the matter (subject to the review of the district
court for clear or legal error) while the latter allows the magistrate only to submit 'proposed
findings and recommendations' for the district court's de novo review."  Reynaga v.
Cammisa, 971 F.2d 414, 416 (9th Cir. 1992).

The Ninth Circuit has not determined whether a motion to remand qualifies as a
dispositive or nondispositive motion, and courts are split on the issue.  See Lerma v. URS
Fed. Support Servs., No. 1:11-CV-00536-LJO, 2011 WL 2493764, at *2 (E.D. Cal. June
22, 2011).  Neither party addresses this issue or the proper standard of review.  Thus, out of
an abundance of caution, the Court applies the more stringent standard and will review de
novo the Magistrate's recommendation to grant Plaintiff's motion to remand and to award
attorney's fees.

### B.     MOTION TO REMAND

"A defendant may remove an action to federal court based on federal question
jurisdiction or diversity jurisdiction."  Hunter v. Philip Morris USA, 582 F.3d 1039, 1042

1  (9th Cir. 2009) (citing 28 U.S.C. § 1441). "A motion to remand is the proper procedure for

2  challenging removal." Moore-Thomas v. Alaska Airlines, Inc., 553 F.3d 1241, 1244 (9th

3  Cir. 2009). Remand may be ordered either for lack of subject matter jurisdiction or for any

4  defect in the removal procedure. See 28 U.S .C. § 1447(c). "[R]emoval statutes are strictly

5  construed against removal." Luther v. Countrywide Home Loans Servicing, LP, 533 F.3d

6  1031, 1034 (9th Cir. 2008). "The presumption against removal means that the defendant

7  always has the burden of establishing that removal is proper." Moore-Thomas, 553 F.3d at

8  1244. As such, any doubts regarding the propriety of the removal favor remanding the

9  case. See Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).

10 **III.    DISCUSSION**

11      **A.    REMOVAL AND PREEMPTION**

12      The federal removal statute provides, in pertinent part, that "any civil action brought

13 in a State court of which the district courts of the United States have original jurisdiction,

14 may be removed by the defendant or the defendants, to the district court of the United

15 States for the district and division embracing the place where such action is pending."

16 28 U.S.C. § 1441(a). "The district courts shall have original jurisdiction of all civil actions

17 arising under the Constitution, laws, or treaties of the United States." Id. § 1331. The

18 "arising under" qualification of § 1331 confers district courts with jurisdiction to hear

19 "[o]nly those cases in which a well-pleaded complaint establishes either that [1] federal law

20 creates the cause of action or that [2] the plaintiff's right to relief necessarily depends on

21 resolution of a substantial question of federal law." Armstrong v. N. Mariana Islands, 576

22 F.3d 950, 954-55 (9th Cir. 2009) (internal quotations omitted). In other words, the federal

23 law must be a "necessary element" of the state law claim. Id.

24      "The presence or absence of federal-question jurisdiction is governed by the 'well-

25 pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal

26 question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar,

27 Inc. v. Williams, 482 U.S. 386, 392 (1987); see Hunter, 582 F.3d at 1042. A party's

28 assertion of a federal defense, including the defense of preemption, ordinarily will not

justify removal of an action to federal court.  <u>Caterpillar</u>, 482 U.S. at 393.  Nonetheless, the Supreme Court has recognized an "independent corollary" to this rule known as the "complete preemption doctrine."  <u>Id.</u>  This doctrine provides that the preemptive force of certain federal statutes is so "extraordinary" that it "'converts an ordinary common-law complaint into one stating a federal claim for the purposes of the well-pleaded complaint rule.'"  <u>Id.</u> (quoting <u>Metropolitan Life Ins. Co. v. Taylor</u>, 481 U.S. 58, 65 (1987)).  "Once an area of state law has been completely preempted, any claim purportedly based on that preempted state law is considered from its inception, a federal claim, and therefore arises under federal law."  <u>Id.</u>

The complete preemption doctrine, on which the SEIU relies for its removal, is most often applied to cases involving § 301 of the LMRA.  <u>Id.</u>; 29 U.S.C. § 185(a).  To determine whether a state-law claim is preempted, the Ninth Circuit applies a two-step inquiry as set forth in <u>Burnside v. Kiewit Pacific Corporation</u>, 491 F.3d 1053, 1059 (9th Cir. 2007).  "First, a court must determine 'whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA.'"  <u>Kobold v. Good Samaritan Reg'l Med. Ctr.</u>, 832 F.3d 1024, 1032 (9th Cir. 2016) (quoting <u>Burnside</u>, 491 F.3d at 1059).  In making that determination, a court must focus on the legal character or basis of the claim, *not* whether the facts could separately give rise to a claim based specifically on the CBA.  <u>Id.</u> at 1033.  A claim is preempted only if the legal right to bring the claim "exists solely as a result of the CBA."  <u>Id.</u> at 1032.  If the claim "exists independently of the CBA," the court moves to the second step.  <u>Id.</u> at 1032-33.

At the second step of the <u>Burnside</u> preemption analysis, the court ascertains whether the claim "is nevertheless substantially dependent on analysis of a [CBA]."  <u>Kobold</u>, 832 F.3d at 1032-33 (citation omitted).  This determination depends on "whether the claim can be resolved by 'look[ing] to' versus interpreting the CBA.  If the latter, the claim is preempted; if the former, it is not."  <u>Id.</u> at 1033.  The Ninth Circuit has "stressed that, in the context of § 301 complete preemption, the term 'interpret' is defined narrowly—it means something more than 'consider,' 'refer to,' or 'apply.'"  <u>Id.</u> (citation omitted).  "Moreover,

1  preemption is warranted only where 'the need to interpret the CBA ... inhere[s] in the

2  nature of the plaintiff's claim. If the claim is ... based on state law, § 301 preemption is not

3  mandated simply because the defendant refers to the CBA in mounting a defense." Matson

4  v. United Parcel Serv., Inc., 840 F.3d 1126, 1132 (9th Cir. 2016) (citation omitted).

5      **B.    APPLICATION OF THE BURNSIDE TEST**

6      Under the first part of the Burnside test, a claim is preempted if the right being

7  asserted "exists solely as a result of the CBA." 491 F.3d at 1059. The SEIU does not

8  contend that Plaintiff's claims are premised on rights that emanate exclusively from the

9  CBA. The Court therefore turns to the second prong of the Burnside test and addresses

10  whether Plaintiff's causes of action are "substantially dependent" on an interpretation of the

11  CBA. Kobold, 832 F.3d at 1032-33. As indicated above, a claim is substantially dependent

12  on a CBA if its resolution requires terms in the CBA to be interpreted. Id. A claim is

13  preempted only to the extent that it is necessary to *interpret*—as opposed to merely

14  reference or consult—the CBA. Id. Applying the foregoing standard, the Court will

15  review each cause of action of the Complaint that the SEIU contends is preempted by § 301

16  of the LMRA.

17      **1.    CFRA Claims**

18      Under the CFRA, a qualifying employee is entitled to up to twelve weeks of unpaid

19  leave from work in the event of a serious illness or injury to the employee or a close family

20  member. Cal. Gov. Code § 12945.2(a); Dudley v. Dep't of Transp., 90 Cal. App. 4th 255,

21  260 (2001).[5] "Violations of the CFRA generally fall into two types of claims:

22  (1) 'interference' claims in which an employee alleges that an employer denied or

23  interfered with her substantive rights to protected medical leave, and (2) 'retaliation' claims

24  in which an employee alleges that she suffered an adverse employment action for

25

26

27      [5] To qualify for CFRA leave, the employee must have more than 12 months of
service with the employer, and have worked at least 1,250 hours for that employer during
28  the previous 12-month period. Cal. Gov. Code § 12945.2(a).

exercising her right to CFRA leave." Rogers v. County of Los Angeles, 198 Cal.App.4th 480, 487-88 (2011).

### a) Interference

Plaintiff's first cause of action is an "interference" claim, the elements of which are: (1) the employee's entitlement to CFRA leave rights; and (2) the employer's interference with or denial of those rights. Faust v. Cal. Portland Cement Co., 150 Cal. App. 4th 864, 879 (2007). To satisfy these requirements, the Complaint alleges facts establishing that: (1) Plaintiff was qualified to take family leave under the CFRA; and (2) Defendants interfered with those rights by terminating his employment upon his timely return from leave. Compl. ¶¶ 11, 21, 32. As to the second element, Plaintiff specifically avers as follows: "PLAINTIFF's request [for] medical leave was not granted, because Defendants punished PLAINTIFF for his absence by refusing to restore PLAINTIFF to the position he held prior to taking his family leave to care for his terminally ill wife and by terminating him from his job." Id. ¶ 32. As noted, Plaintiff's position prior to taking family leave was that of an Additional Services employee. Id. ¶ 17.

The SEIU contends that Plaintiff's interference claim "requires the Court to interpret the provisions of the CBA" because "[t]he thrust of [his] claim is that he was returned to a temporary position and not the permanently assigned position the employer had said was his." Opp'n to Mot. for Remand at 11, Dkt. 5. That flaw in that argument is that it blatantly mischaracterizes the Complaint. Neither the CBA nor Plaintiff's status as a permanent employee thereunder is alleged in the pleadings as the basis for Plaintiff's interference claim—or any other cause of action.[6] Rather, the pleadings clearly and succinctly allege that Defendants interfered with his right to take CFRA leave by terminating his employment as a full-time Additional Services employee upon his timely

---

[6] The SEIU also incorrectly claims that "Plaintiff states in his complaint that he worked at the Embarcadero Center 4 and was a member of SEIU Local 87 subject to the CBA between the union and Able Services." Opp'n at 10 (citing Compl. ¶ 17). Paragraph 17 merely alleges that Plaintiff worked for Able, was assigned to Embarcadero Center 4, and was a member of the SEIU. There is no mention of the CBA in Paragraph 17 or anywhere else in the Complaint.

return from leave.  Compl. ¶¶ 21, 32.  In other words, Plaintiff claims that as a result of having been fired, he was not returned to "the same or a comparable position upon the termination of the leave," in violation of the CFRA.  Cal. Gov. Code § 12945.2.  Because Plaintiff's status as a temporary or permanent worker within the meaning of the CBA is not alleged as the basis for or otherwise material to his interference claim, said claim is not preempted.

### b)      Retaliation

Plaintiff's second cause of action is based on the anti-retaliation provision of the CFRA, which forbids an employer "from discharging or discriminating against an employee who requests family leave or medical leave."  Dudley, 90 Cal. App. 4th at 260 (citing Cal. Gov. Code § 12945.2(l)).  The elements of a cause of action for retaliation in violation of CFRA are:  "(1) the defendant was an employer covered by CFRA; (2) the plaintiff was an employee eligible to take CFRA leave; (3) the plaintiff exercised her right to take leave for a qualifying CFRA purpose; and (4) the plaintiff suffered an adverse employment action, such as termination, fine, or suspension, because of her exercise of her right to CFRA leave."  Dudley, 90 Cal. App. 4th at 261.

Adverse employment actions are those that "materially affect the terms and conditions of employment."  Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1036 (2005).  "Among those employment decisions that can constitute an adverse employment action are termination …."  Brooks v. City of San Mateo, 229 F.3d 917, 928-29 (9th Cir. 2000).  Here, the Complaint alleges that Plaintiff was qualified to take CFRA leave, and that Defendants retaliated against him "for taking his leave by refusing to restore [him] to the position he held prior to taking family leave to care for his terminally ill wife and terminating him from his job."  Compl. ¶¶ 11, 39.

The SEIU argues that in order to determine whether Plaintiff suffered an adverse employment action, the Court must interpret the provisions of the CBA governing the classification of employees as either temporary or permanent.  Opp'n at 13.  According to the SEIU, the CBA provides that a temporary employee has no right to a permanent

placement and may be directed to the union hall for a new assignment at any time. Id. Thus, in the case of Plaintiff, the SEIU asserts that if Plaintiff is deemed to have been a temporary employee under the CBA, he technically could not have been "terminated" on the ground that he had no right to an indefinite placement with Able. Id.

The fundamental flaw with the SEIU's preemption argument is the same as in the first cause of action: it misconstrues the pleadings. As discussed above, the Complaint expressly alleges that Plaintiff was a full-time employee of Able working as an Additional Services employee, and that he was subsequently terminated in retaliation for taking CFRA leave. Compl. ¶¶ 11, 18, 39. No provision of the CBA must be interpreted to prove those facts at trial. The mere possibility that the SEIU could, *as a defense*, assert that Plaintiff was not terminated because he was actually a temporary employee is insufficient to establish preemption. See Ward v. Circus Circus Casinos, Inc., 473 F.3d 994, 998 (9th Cir. 2007) ("[T]he fact that a CBA will be consulted in the course of state law litigation does not require preemption. A defense based on the CBA is alone insufficient to require preemption.") (citation omitted); Cardosa v. Omni Hotels Mgmt. Corp., 177 F. Supp. 3d 1278, 1285 (S.D. Cal. 2016) ("To the extent the CBAs may be consulted or relied upon by Defendants in defense of Plaintiff's claims, that is insufficient to find preemption.").

As an alternative matter, the SEIU argues that even if the character of Plaintiff's employment status does not require an interpretation of the CBA, his allegation that Able failed "'to restore plaintiff to the position he held prior to taking family leave'" constitutes a separate alleged adverse employment action requiring an interpretation of the CBA. Opp'n at 13-14 (quoting Compl. ¶ 39). In particular, the SEIU again claims that the issue of whether Plaintiff was restored to his pre-leave position requires the Court to delve into the question of whether Plaintiff was a permanent or temporary employee within the meaning of the CBA. Id. This contention lacks merit.

As an initial matter, the two alleged adverse actions are inextricably intertwined. By virtue of having been terminated, Plaintiff was not restored to his pre-leave position. In other words, these adverse actions are, as alleged, one in the same. But even if the harms

were distinct, the SEIU has failed to demonstrate that it is necessary to interpret the CBA. As noted, the position Plaintiff allegedly held prior to taking family leave was that of an Additional Services employee, assigned to work at the Embarcadero Center.  Compl. ¶¶ 11, 17.  The question of whether or not Plaintiff was restored to that position upon his return from leave can be determined without resorting to the CBA.  The Court finds that the second cause of action is not preempted.

### 2. FEHA Claims for Race Discrimination and Retaliation

The FEHA prohibits an employer from discriminating against an employee who is a member of a protected class (i.e., race, gender, national origin, sexual orientation, etc.) with respect to the terms and conditions of their employment.  See Cal. Gov. Code § 12940(a). The SEIU contends that "[i]n order to determine if the plaintiff suffered an adverse action, the Court will have to determine whether the company's issuance of the letter [from Able] can grant permanency status under the terms of the CBA."  Opp'n at 15.  This contention fails for the same reasons set forth above.  As discussed, an employment action is "adverse" if it materially affects the terms and conditions of employment.  Yanowitz, 36 Cal.4th at 1036.  In the instant case, Plaintiff alleges that he was terminated *on account of his race*. Compl. ¶¶ 21-23.  The resolution of that allegation is not dependent on whether Able's June 2013 letter to Plaintiff was legally sufficient to establish him as a permanent employee under the CBA.

In any event, even if the CBA's definition of permanent and temporary employees were germane to Plaintiff's claims or the SEIU's defense, that alone is insufficient to establish complete preemption under the § 301 of the LMRA.  See Ramirez v. Fox Television Station, Inc., 998 F.2d 743, 748-49 (9th Cir. 1993) ("Although the inquiry may begin with the [CBA], it certainly will not end there" because his "underlying cause of action is that [Defendants] discriminated against [him] in applying and/or altering those

terms and conditions."). The Court finds that Plaintiff's third cause of action for

discrimination under the FEHA is not preempted.[7]

### 3. Remaining Common Law Causes of Action

The SEIU briefly argues that Plaintiff's sixth cause of action for wrongful

termination in violation of public policy and seventh cause of action for IIED are

preempted for the same reasons asserted as to his claims under the CFRA and FEHA.

Opp'n at 16. Accordingly, for the reasons stated above, the Court finds that Plaintiff's sixth

and seventh causes of action are not preempted by the LMRA.

### 4. Summary

The Court finds that none of the causes of action in the Complaint cited by the SEIU

require the Court to interpret any terms of the CBA. Plaintiff's claims are not dependent on

whether Plaintiff should have been classified as a permanent or temporary worker, as those

terms are defined under the CBA. Applying the analytical framework set forth in <u>Burnside</u>

to the Complaint, the Court finds that Plaintiff's claims are not preempted and that the

SEIU's removal of the action was improper. Plaintiff's motion to remand is therefore

GRANTED.

### C.    ATTORNEY'S FEES

The Court may "require payment of just costs and any actual expenses, including

attorney fees, incurred as a result of removal." 28 U.S.C. § 1447(c). "Absent unusual

circumstances, courts may award attorney's fees under § 1447(c) only where the removing

party lacked an objectively reasonable basis for seeking removal." <u>Jordan v. Nationstar</u>

<u>Mortg. LLC</u>, 781 F.3d 1178, 1184 (9th Cir. 2015) (citing <u>Martin v. Franklin Capital Corp.</u>,

546 U.S. 132, 140 (2005)). The Court may award costs for improper removal even absent a

finding of bad faith. <u>Moore v. Permanente Med. Grp., Inc.</u>, 981 F.2d 443, 445 (9th Cir.

1992). As reflected by the language of the statute, whether or not to award fees is left to

---

[7] The SEIU does not contend that Plaintiff's fourth cause of action for retaliation and
fifth cause of action for failure to prevent discrimination are preempted.

1    the trial court's discretion.  See Martin v. Franklin Cap. Corp., 546 U.S. 132, 136, 139

2    (2005).

3        In his motion, Plaintiff requested, and the Magistrate recommended, awarding the

4    sum of $7,875.00 "to compensate him for the attorneys' fees he incurred as a result of SEIU

5    Local 87's improper removal."  Order at 9.  In recommending this award, the Magistrate

6    found that the SEIU lacked an objectively reasonable basis for removing the action and that

7    its preemption arguments were "premised on a misleading characterization of [Plaintiff's]

8    claims."  Id. at 10.  She also noted that the SEIU did not oppose Plaintiff's request for

9    attorney's fees in its response to the motion to remand.  Id. at 9.

10        Notwithstanding its prior failure to oppose Plaintiff's fee request, the SEIU now

11   objects to the Magistrate's recommendation to award fees.  Def.'s Mot. for Relief at 5-6.

12   However, having failed to previously oppose Plaintiff's fee request in its opposition to his

13   motion to remand, the SEIU has waived its right to do so now.  See Marshall v. Chater, 75

14   F.3d 1421, 1426-27 (10th Cir. 1996) ("Issues raised for the first time in objections to the

15   magistrate judge's recommendation are deemed waived."); see also United States v.

16   Howell, 231 F.3d 615, 621 (9th Cir. 2000) (holding that the district court, in reviewing

17   objections to a magistrate judge's report and recommendation, is not required to consider

18   evidence that was not presented to the magistrate judge).

19        Waiver aside, for the reasons discussed above, the Court finds that the SEIU lacked

20   an objectively reasonable basis for removing the action.  All of the SEIU's arguments for

21   preemption rest upon a wholly misplaced construction of the pleadings.  Plaintiff has

22   alleged straightforward claims predicated principally on the theory that he was terminated

23   in retaliation for taking family leave and because of his race.  Such claims are independent

24   of and do not require an interpretation of the CBA.  While the SEIU may seek to interject

25   provisions of the CBA in the course of presenting its defense, the law is well settled that a

26   defense based on a CBA is insufficient to establish preemption.  See Ward, 473 F.3d at 998.

27        After reviewing the issue de novo, the Court agrees with the Magistrate's

28   determination that the SEIU lacked an objectively reasonable basis for removing the action

on the ground of preemption under the LMRA. The Court therefore GRANTS Plaintiff's request for a fee award under § 1447(c) and awards Plaintiff the sum of $7,875.00.

## IV.   **CONCLUSION**

For the reasons set forth above,

IT IS HEREBY ORDERED THAT:

1.      Defendant SEIU Local 87's objections to the Magistrate's Report and Recommendation, issued on January 23, 2017, are OVERRULED, and the Motion for Relief from Nondispositive Pretrial Order is DENIED.

2.      The Magistrate's Report and Recommendation is ACCEPTED and shall become the Order of the Court.  Plaintiff's motion to remand is GRANTED.  Plaintiff is awarded $7,875.00 in attorney's fees.

3.      Pursuant to 28 U.S.C. § 1447(c), the instant action is REMANDED to San Francisco County Superior Court.  The Clerk shall close the file and terminate any pending matters.

IT IS SO ORDERED.

Dated:  5/1/17

SAUNDRA BROWN ARMSTRONG
Senior United States District Judge